IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| ECIMOS, LLC; and ELECTRICAL CONTROLS, INC.; <br><br> Plaintiffs, <br><br> v. <br><br> NORTEK GLOBAL HVAC LLC; LOGICAL SYSTEMS, INC.; LOGICAL SYSTEMS, LLC; GAIL WAYNE ROANE; and MICHAEL GRAY, <br><br> Defendants. | No. 2:14-cv-02703-SHM |

## ORDER

Before the Court are six motions. First, on September 13, 2016, Charles M. Weirich, Jr. ("Weirich") filed a motion asking the Court to reconsider a June 2016 award of sanctions against Weirich and Daniel Frederick Peel ("Peel") based on their conduct as counsel for Plaintiffs ECIMOS, LLC ("ECIMOS") and Electrical Controls, Inc. ("EC"). (Mot. of Pls.' Attorney to Revise Order to Remove Award of Sanctions Against Pls.' Attorneys and Supporting Mem. of Law, ECF No. 224 ("Reconsideration Mot.").) Defendants Nortek Global HVAC LLC ("Nortek Global"); Logical Systems, Inc. ("LSI"); Logical Systems, LLC ("LSL"); Gail Wayne Roane ("Roane"); and Michael Gray ("Gray") (collectively, "De-

fendants")[1] filed a response to the Reconsideration Motion on September 20, 2016. (Defs.' Resp. to Mot. of Pls.' Attorney to Revise Order to Remove Award of Sanctions Against Pls.' Attorneys, ECF No. 229 ("Reconsideration Resp.").) On September 26, 2016, Magistrate Judge Diane Vescovo filed her report and recommendation addressing the Reconsideration Motion. (R. & R. on Pl.'s Mot. to Reconsider Order on Mot. to Dismiss, ECF No. 230 ("Reconsideration Report").) No parties objected to the Reconsideration Report, and the time to do so has passed. (Id. at 6 (setting deadline for objections).)

Second, on September 27, 2016, Plaintiffs, Weirich, and Peel filed a motion asking the Court to stay an order compelling payment of the June 2016 sanctions award. (Motion to Stay Order Compelling Payment of Sanctions and Supporting Mem., ECF No. 231 ("Stay Mot.").) The same day, Defendants and former Defendant Tesluk filed a response to the Stay Motion. (Resp. of Pls.' [sic] to Mot. to Stay Order Compelling Payment of Sanctions, ECF No. 233 ("Stay Resp.").)

---

[1] Plaintiffs' claims against Defendant David Tesluk ("Tesluk") were dismissed in this Court's order dated June 15, 2016. (Order 12, ECF No. 195 ("June 2016 Order").) He is no longer a defendant, but has a pending counterclaim and an unpaid award of sanctions. (See Answer of David Tesluk to Third Am. Compl., and Counter-Compl. of David Tesluk Against ECIMOS, LLC, and Electrical Controls, Inc. 20-22, ECF No. 55; Order Awarding Attorney Fees and Expenses to the Defs. 20, ECF No. 208 ("Fee Order").)

The third and fourth motions before the Court are interrelated. On October 4, 2016, Defendants and Tesluk filed a motion asking the Court to enforce a settlement agreement purportedly reached by the parties. (Defs.' Mot. to Enforce Settlement Agreement, ECF No. 238 ("Settlement-Enforcement Mot."); <u>see also</u> Defs.' Mem. in Supp. of Mot. to Enforce Settlement Agreement, ECF No. 238-1 ("Settlement-Enforcement Mem.").) On October 26, 2016, Stephen Olita, the principal of both Plaintiffs, emailed to the Court a <u>pro se</u> response (the "Olita Response") to the Settlement-Enforcement Motion. On February 7, 2017, Plaintiffs, represented by new counsel, submitted a motion asking for leave to supplement the Olita Response. (Mot. and Supporting Mem. for Leave to Suppl. Resp. to Stephen G. Olita's Resp. to Def.'s Mot. to Enforce Settlement Agreement, ECF No. 244 ("Leave-to-Suppl. Mot.").) Attached to the Leave-to-Supplement Motion is a proposed supplemental response to the Settlement-Enforcement Motion. (Suppl. Resp. to Stephen G. Olita's Resp. to Defs.' Mot to Enforce Settlement Agreement, ECF No. 244-1 ("Settlement-Enforcement Resp.").) On February 17, 2017, Defendants and Tesluk filed an opposition to the Leave-to-Supplement Motion that responded to the Leave-to-Supplement Motion and the Settlement-Enforcement Response. (Defs. Opp'n to Pls.' Mot. for Leave to Suppl. Resp. to Stephen G. Olita's Resp. to Defs.' Mot. to

Enforce Settlement Agreement, ECF No. 245 ("Leave-to-Suppl. Opp'n").)

The fifth and sixth motions before the Court are also interrelated. On March 31, 2017, Defendants and Tesluk filed a motion asking the Court to (1) enforce the purported settlement agreement and dismiss this action, or in the alternative, (2) dismiss this action with prejudice. (Defs.' Second Renewed Mot. to Dismiss and for Sanctions, ECF No. 247 ("Dismissal Mot.").[2]) On April 14, 2017, Plaintiffs filed a response to the Dismissal Motion. (Pls.' Resp. to Defs.' Second Renewed Mot. to Dismiss and for Sanctions and Counter-Mot. to Stay Proceedings Pending the Court's Ruling on Defs.' Mot. to Enforce Settlement Agreement, ECF No. 249 ("Dismissal Resp.").) The Dismissal Response included a "countermotion" asking the Court to stay these proceedings until the Court rules on the Settlement-Enforcement Motion ("Stay Countermotion"). (Id. at 3.) On April 24, 2017, Defendants and Tesluk filed a document serving as a reply in support of the Dismissal Motion and as a response to the Stay Countermotion. (Defs.' Reply in Supp. of Second Renewed Motion to Dismiss and for Sanctions, ECF No. 252 ("Dismissal Reply").)

For the reasons discussed below, the Leave-to-Supplement Motion is GRANTED and the Settlement-Enforcement Motion is

---

[2] Defendants and Tesluk filed identical documents at ECF Nos. 247 and 248. The document at ECF No. 248 is stricken.

GRANTED in part and DENIED in part. The Reconsideration Motion
is GRANTED, and the sanctions levied against Weirich and Peel in
the June 2016 Order are stricken. The Dismissal Motion is
GRANTED in part and DENIED in part. This action is DISMISSED
WITH PREJUDICE. The Stay Countermotion and the Stay Motion are
DENIED as moot.

## I.    BACKGROUND

The history of this matter has been recounted in, <u>inter
alia</u>, (1) Section I of Magistrate Judge Vescovo's report and
recommendation addressing a motion to dismiss filed by Defend-
ants and Tesluk in September 2015, and (2) Section I of the June
2016 Order. (R. & R. on Defs.' Mot. to Dismiss and Order Grant-
ing Defs.' Mot. to Strike the Pls.' Suppl. Resp. and Order Deny-
ing Pls.' Mot. for Leave to File DVDs and Order Denying Defs.'
Mot. for Leave to File Notice of Additional Deficiencies 3–25,
ECF No. 183 ("March 2016 Report"); June 2016 Order 3–5.) The
following background section addresses subsequent proceedings.

On July 15, 2016, Defendants filed a "renewed" motion to
dismiss based on "continued discovery deficiencies" by Plain-
tiffs. (Defs.' Renewed Mot. to Dismiss Based on Pls.' Continued
Discovery Deficiencies or, Alternatively, Mot. for Extension of
Time 1, ECF No. 197 ("July 2016 Mot. to Dismiss").) Defendants
complained of discovery deficiencies after the March 2016 Re-
port, specifically, that between March 2016 and July 2016,

Plaintiffs had done nothing to address their outstanding discovery deficiencies. (See, e.g., id. at 2-6.) Defendants sought dismissal as a discovery sanction. (See, e.g., id. at 6-7.) The Court referred the July 2016 Motion to Dismiss to Magistrate Judge Vescovo. (Order of Reference, ECF No. 207.)

On July 22, 2016, Magistrate Judge Vescovo issued an order awarding Defendants and Tesluk certain attorney fees and expenses pursuant to the June 2016 Order. (See generally Fee Order.) The June 2016 Order had ordered Plaintiffs, Weirich, and Peel to pay attorney fees to Defendants and Tesluk as a sanction. (June 2016 Order 12-16.) After entering the June 2016 Order, the Court referred to Magistrate Judge Vescovo various objections Plaintiffs had made to the requested amount of attorney fees. (See Objs. of Pls. and Pls.' Counsel to Amount of Attorneys' Fees Requested in Affidavits of Defense Counsel, ECF No. 181; Order of Reference, ECF No. 196.) The Fee Order addressed those objections. (See generally Fee Order.) The Fee Order required Plaintiffs to pay Defendants and Tesluk $53,902.98, and required Weirich and Peel to pay Defendants and Tesluk $51,223.38. (Id. at 20-21.) The payments were due "within twenty-eight days" -- i.e., by August 19, 2016. (Id. at 20.)

On July 29, 2016, Plaintiffs filed a response to the July 2016 Motion to Dismiss. (Pls.' Resp. to Defs.' Renewed Mot. to Dismiss or Alternatively, Mot. for Extension of Time, ECF No.

210.) On August 24, 2016, Plaintiffs, Weirich, and Peel filed a document expressing various objections to the Fee Order. (Objs. of Pls. and Pls.' Counsel to Order Awarding Attorney Fees and Expenses to the Defs., ECF No. 215 ("Fee-Order Objs.").) On August 29, 2016, Defendants filed a reply in support of the July 2016 Motion to Dismiss. (Defs.' Reply in Supp. of their Renewed Mot. to Dismiss Based on Pls.' Continued Discovery Deficiencies or, Alternatively, Mot. for Extension of Time, ECF No. 216.)

On August 30, 2016, Defendants filed a motion asking the Court to compel Plaintiffs and Plaintiffs' Counsel to comply with the Fee Order. (Defs.' Notice and Mot. to Compel Compliance with the Court's Order, ECF No. 217 ("Mot. to Compel Compliance").) The Motion to Compel Compliance represented that "Plaintiffs and their counsel have failed to comply with [the Fee Order]," and asked the Court to compel the ordered payments. (Id. at 1.) The Court referred the Motion to Compel Compliance to Magistrate Judge Vescovo. (Order of Reference, ECF No. 220.)

On September 13, 2016, Weirich filed the Reconsideration Motion. The Court referred the Reconsideration Motion to Magistrate Judge Vescovo on September 15, 2016. (Order of Reference, ECF No. 225.) The same day, Plaintiffs filed a response to the Motion to Compel Compliance. (Pls.' Resp. to Defs.' Notice and Mot. to Compel Compliance with the Court's Order, ECF No. 226 ("Mot. to Compel Compliance Resp.").)

On September 19, 2016, Magistrate Judge Vescovo granted the Motion to Compel Compliance. (Order Granting Defs.' Mot. to Compel Pls.' Compliance with the Ct.'s Order, ECF No. 227 ("Order Granting Mot. to Compel Compliance").) Plaintiffs, Weirich, and Peel had argued that the Fee Order was not a final order and that, until it was final, paying the sanctions award was unnecessary. (See Mot. to Compel Compliance Resp. 2–3.) Magistrate Judge Vescovo rejected that argument and ordered Plaintiffs, Weirich, and Peel to pay the sanctions award within seven days, by September 26, 2016. (Order Granting Mot. to Compel. 4–5.)

On September 26, 2016, Magistrate Judge Vescovo filed the Reconsideration Report. It recommends that the Court deny the Reconsideration Motion "to the extent [it] seeks revision of the [March 2016 Report] but that the Court reconsider [the June 2016 Order] if [the Court had] failed to consider" Plaintiffs' objections to the March 2016 Report. (Id. at 2.)

Weirich and Peel filed the Stay Motion on September 27, 2016. The Stay Motion represents that the parties have "reached an agreement for the resolution of all claims, counterclaims, and sanctions awards." (Stay Mot. ¶ 1.) The gravamen of the motion is that, because the settlement agreement has resolved the sanctions award, enforcing the award is unnecessary. The same day, the parties filed a Notice of Settlement. (ECF No. 232.) Plaintiffs also filed the Stay Response.

On October 4, 2016, Defendants and Tesluk filed the Settlement-Enforcement Motion. That motion recounts the history of the September 2016 settlement negotiations. (Settlement-Enforcement Mot. ¶¶ 1–7; see also Settlement-Enforcement Mem. 2-6.) According to Defendants and Tesluk, the parties reached a binding settlement agreement verbally on Friday, September 23, 2016, "with the understanding that the settlement would be further reduced to a more detailed writing over the weekend." (Settlement-Enforcement Mot. ¶ 1.) Following negotiations over the weekend and on the following Monday, "[a]t 3:00 pm on Monday, September 26, 2016, [Weirich] sent counsel for Defendants an email communicating Plaintiffs' acceptance of the final draft of the settlement agreement." (Id. ¶ 3.) On September 27 and 28, however, Weirich and Peel "advised Defendants that [Stephen Olita] had not signed the agreed upon [Written Settlement Agreement ("WSA")], and was not returning [Weirich's and Peel's] calls or text messages." (Id. ¶ 4.) Late in the afternoon on September 29, "Plaintiffs' counsel notified Defendants . . . that [Olita] was no longer willing to sign the [WSA]." (Id. ¶ 7.) The Settlement-Enforcement Motion asks the Court to "find that the [WSA] is binding upon all Parties"; "[d]ismiss this case, with prejudice"; and "[a]ward Defendants their attorney fees and costs incurred since Monday, September 26, 2016, including those incurred with respect to" the Settlement-

Enforcement Motion, "as a sanction for Plaintiffs' and Mr. Oli-ta's conduct." (Id. ¶ 9(a)-(c).)

The same day that Defendants and Tesluk filed the Settle-ment-Enforcement Motion, Weirich and Peel filed motions to with-draw as Plaintiffs' counsel. (Charles M. Weirich, Jr.'s Am. Mot. to Withdraw as Counsel for Pls. and Supp. Mem. of Law, ECF No. 236 ("Weirich Withdrawal Mot."); Daniel F.B. Peel's Motion to Withdraw as Counsel for Pls. and Supp. Mem. of Law, ECF No. 237 ("Peel Withdrawal Mot.").) On October 12, 2016, the Court entered an order that, inter alia, granted the withdrawal mo-tions. (Order 8-11, ECF No. 239 ("October 2016 Order").) The order also instructed Plaintiffs to respond to the Settlement-Enforcement Motion within fourteen days. (Id. at 1, 11-12.)

On October 26, 2016, Olita sent the Court an email with nu-merous attachments, including the Olita Response. (Email from Stephen Olita, ECIMOS, LLC, to Hon. Samuel H. Mays, Jr. (Oct. 26, 2016) (attachment titled "ECIMOS Response to ORDER DOC 239.pdf").) On November 9, 2016, Defendants and Tesluk filed a Notice Regarding Motion to Enforce Settlement Agreement. (ECF No. 240.) The notice states that Defendants and Tesluk received the Olita Response and argues that the Court should grant the Settlement-Enforcement Motion. (See generally id.)

On December 27, 2016, three attorneys with Bateman Gibson, LLC, filed notices of appearance seeking to represent Plain-

tiffs.  (Notice of Appearance, ECF No. 241 (appearance of J. O'Neal Perryman); Notice of Appearance, ECF No. 242 (appearance of Ralph T. Gibson); Notice of Appearance, ECF No. 243 (appearance of Everett B. Gibson).)  On February 7, 2017, Plaintiffs, through their new counsel, filed the Leave-to-Supplement Motion and the accompanying Settlement-Enforcement Response.  The gravamen of the Settlement-Enforcement Response is that Weirich and Peel pursued their own interests, not Plaintiffs', when negotiating the Settlement Agreement.  (See generally Settlement-Enforcement Resp.)  On February 17, 2017, Defendants and Tesluk filed the Leave-to-Supplement Opposition.

On February 28, 2017, the Court entered an order addressing the July 2016 Motion to Dismiss.  (Order, ECF No. 246.)  The Court noted that, if it granted the Settlement-Enforcement Motion, the July 2016 Motion to Dismiss would be moot.  (Id. at 2.)  The Court denied the July 2016 Motion to Dismiss to the extent it requested dismissal of the action.  (Id. at 3.)  Because Defendants had faced a deadline when they filed the July 2016 Motion to Dismiss, that motion had requested, in the alternative, an extension of time to file a motion for sanctions based on any "additional or new discovery deficiencies."  (Id.)  The Court granted the July 2016 Motion to Dismiss insofar as it requested an extension of time.  (Id.)  The Court gave Defendants until March 31, 2017, "to file a motion for sanctions based on

11

additional or new discovery deficiencies." (Id.)  On March 31,
2017, Defendants filed the Dismissal Motion.

On April 14, 2017, Plaintiffs filed the Dismissal Response,
which included the Stay Countermotion.  On April 24, 2017, De-
fendants filed the Dismissal Reply.

## II.  JURISDICTION

The operative complaint in this action is the Third Amended
Complaint filed by Plaintiffs on January 14, 2015.  (Third Am.
Compl. for Breach of Contract, Theft of Trade Secrets, Conver-
sion, Civil Conspiracy, Procurement of Breach of Contract, and
Interference with Business Relations, ECF No. 47 ("Third Am.
Compl.").)  Under 28 U.S.C. § 1331, U.S. district courts have
original jurisdiction "of all civil actions arising under the
Constitution, laws, or treaties of the United States."  The
Third Amended Complaint asserts, inter alia, that Defendants and
Tesluk violated the U.S. Copyright Act of 1976 by infringing on
copyrighted material in Plaintiffs' Integrated Process Control
System ("IPCS").  (See, e.g., Third Am. Compl. ¶¶ 14, 69–77.)
It also asserts, inter alia, that Defendants' and Tesluk's con-
duct related to the IPCS violated the Digital Millennium Copy-
right Act of 1998.  (Id. ¶¶ 78–85.)  Those claims arise under
the Constitution or laws of the United States.  The Court has
jurisdiction over the Third Amended Complaint's federal-law
claims.

The Court has supplemental jurisdiction over Plaintiffs'
state-law claims under 28 U.S.C. § 1367(a). Those claims derive
from a "common nucleus of operative fact" with the federal-law
claims. United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725
(1966); Soehnlen v. Fleet Owners Ins. Fund, 844 F.3d 576, 588–89
(6th Cir. 2016).

## III. ANALYSIS

### A. Leave-to-Supplement Motion

The Leave-to-Supplement Motion asks the Court to allow
Plaintiffs to "supplement" the Olita Response with the Settle-
ment-Enforcement Response. (Leave-to-Suppl. Mot. 1.) Plain-
tiffs represent that, when Olita submitted the Olita Response,
Plaintiffs had been unable to find substitute counsel following
the withdrawals of Weirich and Peel. (Id. at 1–2.) Plaintiffs
represent that they found replacement counsel on December 27,
2016, and that permitting the Settlement-Enforcement Response
would cause "minimal" prejudice to Defendants. (Id. at 2.)

The Leave-to-Supplement Opposition argues that the Settle-
ment-Enforcement Response is "procedurally improper," "untime-
ly," and would prejudice Defendants and Tesluk. (Leave-to-
Suppl. Opp'n 3; see generally id. at 3–4.)

Neither Plaintiffs nor Defendants and Tesluk provide any
citations to rules or caselaw addressing the Court's ability to

grant Plaintiffs leave to file the Settlement-Enforcement Re-
sponse.

The Court will not rely on the Olita Response. In federal
court, corporations and limited-liability companies must be rep-
resented by counsel. See, e.g., Sharpe v. Sierra Leone Ministry
of Surveys, Lands & Env't, No. 2:13-CV-00187, 2015 WL 247949, at
*2 (S.D. Ohio Jan. 20, 2015) (citing cases) (corporations), re-
port and recommendation adopted sub nom. Sharpe v. Sierra Leone
Ministry of Surveys, No. 2:13-CV-187, 2015 WL 5190951 (S.D. Ohio
Sept. 4, 2015); Wilson v. Acacia Dermatology PLLC, No. 1:11-CV-
00069, 2011 WL 3651779, at *1 (M.D. Tenn. Aug. 18, 2011) (citing
cases) (limited-liability companies). Olita is not an attorney.
He cannot represent ECIMOS or EC.

The Court construes the Leave-to-Supplement Motion as a re-
quest to permit a late filing. The October 2016 Order gave
Plaintiffs until October 24, 2016, to respond to the Settlement-
Enforcement Motion. (October 2016 Order 12.) The Leave-to-
Supplement Motion asks the Court to consider a filing made on
February 7, 2017, well beyond the Court's deadline.

"Matters of docket control . . . are within the sound dis-
cretion of the district court." Eng'g & Mfg. Servs., LLC v.
Ashton, 387 F. App'x 575, 582 (6th Cir. 2010) (citing Sixth Cir-

14

cuit cases). Under Rule 6(b)(1)(B),[3] "[w]hen an act may or must be done within a specified time, the court may, for good cause, extend the time . . . on motion made after the time has expired if the party failed to act because of excusable neglect." Courts should determine whether there is excusable neglect considering "five principal factors": "(1) the danger of prejudice to the nonmoving party, (2) the length of the delay and its potential impact on judicial proceedings, (3) the reason for the delay, (4) whether the delay was within the reasonable control of the moving party, and (5) whether the late-filing party acted in good faith." Ashton, 387 F. App'x at 582 (quoting Nafziger v. McDermott Int'l, Inc., 467 F.3d 514, 522 (6th Cir. 2006)).

Plaintiffs failed to act because of excusable neglect. The danger of prejudice to Defendants or Tesluk is minimal. Plaintiffs filed the Leave-to-Supplement Motion more than three months after the relevant deadline, but given this matter's convoluted history, considering the Settlement-Enforcement Response will not deleteriously impact the proceedings. Much of the delay in filing the Leave-to-Supplement Motion occurred because Plaintiffs were searching for new counsel. It took Plaintiffs' new counsel six weeks to file the Leave-to-Supplement Motion, but there is no indication that the Leave-to-Supplement Motion

---

[3] References to "Rule __" are to the Federal Rules of Civil Procedure.

was filed in bad faith. The Leave-to-Supplement Motion is GRANTED, and the Court will consider the Settlement-Enforcement Response.

## B. Settlement-Enforcement Motion

The Settlement-Enforcement Motion asks the Court to enforce the WSA. (Settlement-Enforcement Mot. ¶ 3.) The Settlement-Enforcement Motion asks the court to "[f]ind the [WSA] is binding upon all [p]arties"; to "[d]ismiss this case, with prejudice"; and to "[a]ward Defendants their attorney fees and costs incurred since . . . September 26, 2016 . . . as a sanction for Plaintiffs' and Mr. Olita's conduct and pursuant to the terms and provisions of the [WSA]." (Id. ¶ 9.) If the Court finds that the WSA is not binding, the Settlement-Enforcement Motion asks the Court, in the alternative, to dismiss the case with prejudice, to order Plaintiffs' to pay all attorneys' fees and expenses incurred "in connection with the negotiation and preparation of the [WSA]," and to order Plaintiffs to pay all previously awarded amounts. (Id. ¶ 10.)

In support of the Settlement-Enforcement Motion, Defendants and Tesluk argue that the Court has the "inherent power" to enforce settlement agreements agreed to by the parties. (Settlement-Enforcement Mem. 7 (quoting Brock v. Scheuner Corp., 841 F.2d 151, 154 (6th Cir. 1998).) Defendants and Tesluk argue

that the WSA is valid and binding under Tennessee contract law. (Id. at 7–10.)

The Settlement-Enforcement Response argues that the WSA is not an enforceable agreement binding Plaintiffs. (See generally Settlement-Enforcement Resp.) Plaintiffs argue that, throughout the WSA's negotiation and preparation, Weirich and Peel had an ethical conflict with Plaintiffs. (Id. at 1–3.) Specifically, Plaintiffs claim that Weirich's and Peel's goal in settlement negotiations was to resolve the Court's sanctions award against Weirich and Peel, and that Weirich and Peel sacrificed Plaintiffs' interests to advance that goal. (Id. at 2–3.) Plaintiffs also represent that, on September 26, 2016, Plaintiffs expressed disagreement with the proposed settlement and refused to sign the WSA. (Id. at 4.)

In the Leave-to-Supplement Opposition, Defendants and Tesluk state that "Plaintiffs admit they sought and authorized their counsel to negotiate a settlement." (Leave-to-Suppl. Opp'n 2.) Defendants and Tesluk also state that under Plaintiffs' theory –– i.e., that there is no binding settlement agreement –– Plaintiffs are in violation of the Order Granting Motion to Compel Compliance. (Id. at 2, 4-6.)

The key issue is Weirich's and Peel's authority. Defendants and Tesluk argue that the agreement between Weirich and Peel and Defendants meets all the requirements of a contract.

Even if that be true, the agreement binds Plaintiffs only if Weirich and Peel had the authority to enter into the agreement on Plaintiffs' behalf. The Court need not address Plaintiffs' arguments about an alleged ethical conflict if Weirich and Peel lacked the authority to enter into the WSA on Plaintiffs' behalf.

A preliminary question is what law governs the authority to settle. The WSA contains a choice-of-law provision stating that the "Agreement shall be construed in accordance with and governed by the laws of the state of Tennessee." (Settlement Agreement § 16, ECF No. 238-14 ("WSA").) Plaintiffs, however, contend they did not agree to enter into the WSA. Where there is a dispute about contract formation, the choice-of-law provision in the relevant alleged contract does not dictate the law that applies to contract formation. See, e.g., Wynn v. Five Star Quality Care Tr., No. 3:13-CV-01338, 2014 WL 2560603, at *6 (M.D. Tenn. June 5, 2014).

Defendants, Tesluk, and Plaintiffs rely on Tennessee authority in their briefs. (See, e.g., Settlement-Enforcement Mem. 7-10 (citing Tennessee law on contract formation); Settlement-Enforcement Resp. 2 (citing Tennessee rules on attorney conduct).) When parties do not dispute that a given state's substantive law applies, the Court need not conduct a choice-of-law analysis sua sponte. Stein v. Regions Morgan Keenan Select

High Income Fund (In re Regions Morgan Keegan Sec., Derivative & ERISA Litig.), 166 F. Supp. 3d 948, 957 (W.D. Tenn. 2014) (citing GBJ Corp. v. Eastern Ohio Paving Co., 139 F.3d 1080, 1085 (6th Cir. 1998)).  Tennessee law governs whether Weirich and Peel had authority to bind Plaintiffs to the WSA.

"The general rule in Tennessee is that an attorney cannot surrender substantial rights of a client, including agreeing to dismissal of litigation which permanently bars a client from pursuing his claim, without the express authority of the client." Absar v. Jones, 833 S.W.2d 86, 89 (Tenn. Ct. App. 1992) (citing Tennessee cases); see also Harris v. City of Chattanooga, 137 F. App'x 788, 793 (6th Cir. 2005) (quoting Absar); Schauffert v. Certain Underwriters at Lloyd's, London, No. 3-09-0510, 2011 WL 1156608, at *8 (M.D. Tenn. Mar. 28, 2011) (same), report and recommendation adopted, No. 3-09-0510, 2011 WL 1671638 (M.D. Tenn. May 3, 2011).  The WSA would "surrender substantial rights" of Plaintiffs because it would lead to the dismissal of Plaintiffs' claims with prejudice.  (See WSA §§ 2.1, 5.)  To enter into the WSA on Plaintiffs' behalf, Weirich and Peel needed "express authority" to do so.

"In Tennessee, an agent's express authority is that which the principal gives to him in direct terms, either orally or written." Rubio v. Precision Aerodynamics, Inc., 232 S.W.3d 738, 742–43 (Tenn. Ct. App. 2006) (citing Hollingshead Co. v.

_Baker_, 4 Tenn. App. 362, 368 (1927)).  There is no record evidence that Plaintiffs gave Weirich and Peel express authority to enter into the WSA.  Defendants and Tesluk cite Plaintiffs' statement that, "on September 22, 2016, Plaintiffs authorized [Weirich and Peel] to engage in settlement negotiations."  (Settlement-Enforcement Resp. 3, _cited at_ Leave-to-Suppl. Opp'n 2.) That admission demonstrates, at most, that Weirich and Peel had express authority to negotiate toward a settlement.  It does not establish that Weirich and Peel had express authority to enter into the WSA on Plaintiffs' behalf.

Because Weirich and Peel did not have express authority to enter into the WSA, the WSA does not bind Plaintiffs.  The Settlement-Enforcement Motion is DENIED.

The Settlement-Enforcement Motion seeks three forms of relief if this Court does not enforce the WSA: dismissal of the case with prejudice, an order granting Defendants and Tesluk the attorney fees expended in the negotiation and preparation of the WSA, and an order demanding payment of "all amounts previously awarded to the respective Defendants pursuant to the Court's Orders."  (Settlement-Enforcement Mot. ¶ 10.)  The request for dismissal in the Settlement-Enforcement Motion is DENIED as moot because the Court is granting the Dismissal Motion.  (_See_ Section III.D _infra_.)

The request in the Settlement-Enforcement Motion for an order demanding payment of previously awarded amounts is GRANTED. That relief is a natural result of the unenforceability of the WSA. Plaintiffs are ORDERED to pay Defendants and Tesluk the previously awarded amounts that Plaintiffs owe Defendants and Tesluk and that Plaintiffs have not paid. Plaintiffs owe $3,347.50 to Tesluk; $1,326.00 to Roane and Gray collectively; $11,733.48 to LSI and LSL collectively; and $37,496.00 to Nortek Global. (Fee Order 20.)

The request in the Settlement-Enforcement Motion for attorney fees incurred in the negotiation and preparation of the WSA is DENIED. The Court is dismissing this action with prejudice. A further sanctions award based on Defendants' and Tesluk's fees associated with the WSA is not warranted.

### C.    Reconsideration Motion

The Reconsideration Motion asks the Court to revise the June 2016 Order "to remove that portion which affirms the Magistrate's sanctions award against Plaintiffs' counsel" in the March 2016 Report. (Reconsideration Mot. 1.) It argues that the objections of Plaintiffs' counsel to the March 2016 Report were timely and that the Court failed to give de novo consideration to them. (Id. at 2–7.)

Magistrate Judge Vescovo's Reconsideration Report recommends that the Court find that Weirich's and Peel's objections

to the March 2016 Report were timely. (Reconsideration Report 3-4.) It recommends that the Court deny the Reconsideration Motion "to the extent [it] seeks revision of the [March 2016 Report]," but recommends that the Court "reconsider [its June 2016 Order] if it failed to consider the objections filed by the Plaintiffs." (Id. at 2.)

Congress enacted 28 U.S.C. § 636 to relieve the burden on the federal judiciary by permitting the assignment of district-court duties to magistrate judges. See United States v. Curtis, 237 F.3d 598, 602 (6th Cir. 2001) (citing Gomez v. United States, 490 U.S. 858, 869-70 (1989)); see also Baker v. Peterson, 67 F. App'x 308, 310 (6th Cir. 2003). "The district judge must determine de novo any part of the magistrate judge's disposition that has been properly objected to." Fed. R. Civ. P. 72(b)(3); see also 28 U.S.C. § 636(b)(1). After reviewing the evidence, the court is free to accept, reject, or modify the magistrate judge's proposed findings or recommendations. 28 U.S.C. § 636(b)(1). The district court is not required to review -- under a de novo or any other standard -- those aspects of the report and recommendation to which no objection is made. Thomas v. Arn, 474 U.S. 140, 150 (1985). The district court should adopt the magistrate judge's findings and rulings to which no specific objection is filed. Id. at 151-52.

The Reconsideration Report asks the Court to determine whether it gave proper consideration to Plaintiffs' objections to the March 2016 Report. (Reconsideration Report 5.) The Court reviewed those objections de novo, the proper level of review. (See June 2016 Order 9–15.) It gave the objections that review notwithstanding the Court's ultimately erroneous view that Plaintiffs' objections to the March 2016 Report were untimely. (See, e.g., id. at 8 ("Even if Plaintiffs' [objections are] considered on [their] merits, [they] must fail.").) Fully adopting the Reconsideration Report would lead to denial of the Reconsideration Motion.

The Court has further considered the award of sanctions against Weirich and Peel. Those sanctions are not appropriate in the context of this case. That conclusion is not based on changed facts underlying the sanctions award, but on reconsideration of how the relevant legal standards apply to the facts.

The March 2016 Report bases the sanctions award against Weirich and Peel on five separate sources: Rule 37(b)(2)(A), Rule 37(c)(1), Rule 26(g)(3), 28 U.S.C. § 1927, and the court's inherent power. (March 2016 Report 3, 32–33.) None of those sources mandates a sanctions award following problematic discovery conduct.

Under Rule 37(b)(2)(C), if a party "fails to obey an order to provide or permit discovery," the court "must order the diso-

bedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure." The court need not issue such an order, however, if "the failure was substantially justified or other circumstances make an award of expenses unjust." Fed. R. Civ. P. 37(b)(2)(C).

Under Rule 37(c)(1)(A), "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e)," the court "may order payment of the reasonable expenses, including attorney's fees, caused by the failure." (Emphasis added.) As the use of "may" indicates, courts have wide discretion in imposing sanctions under Rule 37(c)(1)(A). See, e.g., Adkins v. Shelter Mut. Ins. Co., No. 5:12-CV-173-KKC-REW, 2014 WL 12648463, at *2 (E.D. Ky. Dec. 15, 2014); Marais v. Chase Home Fin., LLC, 24 F. Supp. 3d 712, 730 (S.D. Ohio 2014).

Under Rule 26(g)(1), "[e]very disclosure under Rule 26(a)(1) or (a)(3) and every discovery request, response, or objection must be signed by at least one attorney of record . . . ." Rule 26(g)(3) states, "If a certification violates this rule without substantial justification, the court . . . must impose an appropriate sanction on the signer, the party on whose behalf the signer was acting, or both. The sanction may include an order to pay the reasonable expenses, including attorney's fees, caused by the violation." (Emphasis added.) The

24

use of "may" again indicates that courts have wide discretion when deciding whether to impose a fee award under Rule 26(g)(3). See, e.g., Beard v. City of Southfield, No. 14-13465, 2016 WL 6518490, at *4 (E.D. Mich. Nov. 3, 2016); Shapiro v. Plante & Moran, LLP (In re Connolly N. Am., LLC), 376 B.R. 161, 193 (Bankr. E.D. Mich. 2007).

Pursuant to 28 U.S.C. § 1927, "[a]ny attorney . . . who so multiplies the proceedings in any case unreasonably and vexatiously may be required by the court to satisfy personally the excess costs, expenses, and attorneys' fees reasonably incurred because of such conduct." "Courts have 'broad discretion' when deciding whether to award sanctions under [§] 1927." Sandweiss v. Spirit Airlines, Inc., No. 16-CV-12114, 2017 WL 2438790, at *7 (E.D. Mich. June 6, 2017) (quoting N. Ky. Right to Life Comm., Inc. v. Ky. Registry of Election Fin., Nos. 95-6334, 96-5395, 1998 WL 13405, at *8 (6th Cir. Jan. 7, 1998)); see also Miller v. Food Concepts Int'l, LP, No. 2:13-CV-00124, 2016 WL 5122541, at *2 (S.D. Ohio Sept. 21, 2016).

A court has the "inherent power" to assess attorney fees as a sanction "when a party has acted in bad faith, vexatiously, wantonly, or for oppressive reasons." Chambers v. NASCO, Inc., 501 U.S. 32, 45-46 (1991); see also United States ex rel. Tingley v. PNC Fin. Servs. Grp., Inc., No. 16-1725, 2017 WL 3098178, at *2 (6th Cir. July 21, 2017). The Supreme Court has

explicitly stated, however, that this power "must be exercised with restraint and discretion." _Chambers_, 501 U.S. at 44; _see also_ _Tingley_, 2017 WL 3098178, at *2.

All of these sources provide that a court's power to impose attorney-fee sanctions is discretionary. The source that comes closest to creating a mandatory sanction -- Rule 37(b)(2)(A) -- permits a court to refrain from imposing a fee award if circum-stances would make that unjust. There are such circumstances here. For the same reasons that a fee award under Rule 37(b)(2)(A) is not justified, an award of fees under the other sources of sanctioning authority would be unjustified.

A significant factor here is Weirich's and Peel's limited time as counsel when the sanction-triggering conduct occurred. Plaintiffs have retained numerous counsel since filing this case. When ECIMOS filed its original complaint in this action in state court in May 2013, Weirich and Peel were its counsel. (Compl. for Breach of Contract, Theft of Trade Secrets, Conver-sion, Civil Conspiracy, Procurement of Breach of Contract, and Interference with Business Relations 12, ECF No. 1-3 at PageID 21.) On March 17, 2014, Weirich and Peel moved to withdraw as counsel. (Mot. to Withdraw as Counsel of Record for Pl. 1, ECF No. 1-11 at PageID 647-48.) Weirich and Peel were replaced by Lewis Clayton Culpepper and Mark Field of Evans Petree, PC. (_See, e.g._, Notice of Appearance, ECF No. 1-11 at PageID 649;

Order Granting Mot. to Withdraw as Counsel of Record for Pl., ECF No. 1-11 at PageID 651.)

Culpepper and Field began as ECIMOS's counsel of record in April 2014. EC was added in August 2014, in an amended complaint filed by Culpepper, Field, and Michael Marshall, another Evans Petree attorney. (See, e.g., Mot. for Leave to Amend the Compl., ECF No. 1-12 at PageID 666–67.) The Evans Petree attorneys were Plaintiffs' counsel when the case was removed to this Court. (See, e.g., Notice of Removal 7, ECF No. 1 (certificate of service naming Evans Petree attorneys).)

On January 29, 2015, Plaintiffs filed a motion asking the Court for permission to substitute counsel. (Pls.' Mot. for Substitution of Counsel and Cert. of Consultation, ECF No. 53.) On February 6, 2015, the motion was granted. (Order Granting Pls.' Mot. for Substitution of Counsel, ECF No. 56.) Andrew M. Bonderud of the Bonderud Law Firm, P.A., was substituted as Plaintiffs' counsel. (Id. at 1.)

On September 23, 2015, Bonderud filed a motion asking the Court to permit him to withdraw from representing Plaintiffs. (Mot. to Withdraw as Counsel of Record Without Substitution, ECF No. 114.) Bonderud represented that "[m]ultiple grounds for withdrawal exist" under Rule 1.16 of the Tennessee Rules of Professional Conduct and that "[t]hese matters constitute irreconcilable differences and good cause for withdrawal." (Id. ¶¶ 1,

3.)  Bonderud also represented that Plaintiffs had been unable to secure substitute counsel.  (Id. ¶ 4.)

During a telephone status conference on December 16, 2015, Bonderud represented that Plaintiffs had been able to find substitute counsel: Weirich and Peel.  (Minutes, ECF No. 150.)  The same day, the Court entered an order granting Bonderud's motion to withdraw.  (Order Granting Mot. to Withdraw, ECF No. 152.)  On January 4, 2016, Weirich and Peel filed their appearances in this Court.  (Notice of Appearance, ECF No. 153 (Peel); Notice of Appearance, ECF No. 154 (Weirich).)

As discussed above (see Section I supra), Weirich and Peel filed motions to withdraw as Plaintiffs' counsel on October 4, 2016.  Both Weirich and Peel asserted that "[f]urther representation of Plaintiffs will result in a violation" of the Tennessee Rules of Professional Conduct, and that those rules "required" the requests for withdrawal.  (Weirich Withdrawal Mot. ¶¶ 1, 2; Peel Withdrawal Mot. ¶¶ 1, 2.)  The Court granted those motions on October 12, 2016, and Plaintiffs' current counsel filed appearances in late December 2016.  (See Section I supra.)  Plaintiffs have changed counsel four times in less than three-and-a-half years.  In two instances, counsel have asked to withdraw because of ethical concerns about continued representation.

These repeated changes of counsel affect the sanctions award against Weirich and Peel. In their second time as counsel, they inherited discovery disputes they did not create. During 2015, when Plaintiffs were represented by prior counsel, Defendants and Tesluk collectively brought at least four discovery disputes to the Court. (See, e.g., Defs. Nortek Global HVAC LLC and Nortek, Inc.'s Mot. to Compel Discovery from Pls. ECIMOS, LLC, and Electrical Controls, Inc., ECF No. 79 ("First Mot. to Compel"); Defs. Logical Sys. Inc., Logical Sys., LLC, and Nortek Global HVAC LLC's Mot. to Compel Discovery from Pls. ECIMOS, LLC, and Electrical Controls, Inc., ECF No. 82 ("Second Mot. to Compel"); David Tesluk's Mot. to Compel Discovery from Pls. ECIMOS, LLC, and Electrical Controls, Inc., ECF No. 97 ("Third Mot. to Compel"); Defs. Logical Systems, Inc. and Logical Systems, LLC's Mot. to Compel Discovery from Pls. ECIMOS, LLC and Electrical Controls, Inc., ECF No. 99 ("Fourth Mot. to Compel").) These disputes resulted in orders compelling Plaintiffs (not Plaintiffs' counsel) to pay $63,338.04 in attorney fees. (See, e.g., Pls.' Objs. to Magistrate Judge's Orders ¶ 1, ECF No. 141 (stating amount of award); Order, ECF No. 149 (ordering payment following Plaintiffs' objections to Magistrate Judge's award).) Plaintiffs' discovery conduct throughout 2015 was not consistent with their obligations.

When they re-entered the case, Weirich and Peel became in-
volved in these ongoing controversies.  Within a month of filing
their notices of appearance in January 2016, Weirich and Peel
attended a hearing on discovery issues before Magistrate Judge
Vescovo.  (See, e.g., Minute Entry, ECF No. 160.)  Counsel's
preparation for and conduct at that hearing motivated the sanc-
tions award in the March 2016 Report.  The Court agrees with the
March 2016 Report that Weirich's and Peel's handling of discov-
ery matters in January 2016 was not optimal.  On reflection,
however, the Court no longer believes that Weirich's and Peel's
faults in January and February 2016 merit a sanctions award.
The circumstances here are sui generis.  The two most critical
are (1) the short time between Weirich's and Peel's re-entering
the case and the February 3, 2016 hearing, and (2) the clear
record that Plaintiffs are contumacious clients who are unwill-
ing to comply with the rules and orders of the Court.  In these
unique circumstances, the sanctions award against Weirich and
Peel will be stricken.[4]

---

[4] The March 2016 Order states that, "[s]hould the district court
not adopt this portion of the Report and Recommendation recom-
mending the imposition of sanctions on the Plaintiffs' attor-
neys, it is recommended that these expenses and attorney's
fee[s] be imposed on the Plaintiffs."  (March 2016 Report 55
n.21.)  The Court is reversing the sanctions award against
Weirich and Peel, but imposing those sanctions on Plaintiffs, as
recommended by the Magistrate Judge, would not be appropriate
given the result in this case.  Plaintiffs are at fault for the

The Reconsideration Motion is GRANTED. The sanctions award against Weirich and Peel in the June 2016 Order is stricken.

### D. Dismissal Motion and Stay Countermotion

Defendants argue in the Dismissal Motion that the Court should enforce the WSA. (Dismissal Mot. 2, 3, 6.) Alternatively, Defendants ask the Court to sanction Plaintiffs by, _inter alia_, dismissing this action with prejudice. (_Id._ at 4-6.) In particular, Defendants represent that, notwithstanding their challenge to the Settlement-Enforcement Motion, Plaintiffs have done nothing since September 2016 to move the case forward: "Most notably, Plaintiffs' inaction includes failures to: (i) comply with the Court's Order to pay the Court-awarded sanctions by September 26, 2016 . . . ; (ii) cure, _much less attempt to cure_, their numerous discovery deficiencies that Defendants identified over one year ago and which the Court _ordered_ Plaintiffs to address; and (iii) take any action to prosecute this case." (_Id._ at 1-2 (emphasis in original); _see also id._ at 2-4.)

The Dismissal Response represents that Plaintiffs had difficulty finding replacement counsel after the Court permitted Weirich and Peel to withdraw, and argues that Weirich's and

status of discovery in January 2016. Because the Court is sanctioning Plaintiffs by dismissing this action, however, the further sanction of imposing additional expenses and fees on Plaintiffs is unnecessary.

Peel's conduct in negotiating the WSA was unethical. (Dismissal Resp. 1-2.) Plaintiffs represent that they have "worked tirelessly and have incurred fees and expenses totaling tens of thousands of dollars to engage in the discovery process in good faith and get back into the lawsuit," pointing to a purportedly similar case in this District, ECIMOS, LLC v. Carrier Corp., Case No. 15-2726 (W.D. Tenn.). (Id. at 2-3.) Plaintiffs argue that they have been waiting for the Court to resolve the Settlement-Enforcement Motion, arguing that "[i]t is illogical to expect Plaintiffs to incur tens of thousands [of] dollars in additional expenses, notwithstanding the considerable sanctions award that would have to be paid, to address and engage in the discovery process in good faith in this matter only to have the illegal settlement agreement enforced against them." (Id. at 3.) In the Stay Countermotion, Plaintiffs ask the Court to stay discovery in this matter and stay "any continued efforts by Defendants to have the case dismissed through sanctions." (Id.) In the alternative, Plaintiffs ask the Court for "ninety (90) days to address the discovery issues in this matter and be given an opportunity to get back into the lawsuit with the assistance of their present representation." (Id.)

The Dismissal Reply reiterates Defendants' view that the WSA binds Plaintiffs. (See, e.g., Dismissal Reply 1-2.) Defendants also reiterate that, if the Court does not enforce the

WSA, the Court should dismiss this matter with prejudice. (Id. at 3.) Defendants repeat their claim that Plaintiffs have done nothing in the case since September 2016, and argue that Plaintiffs' discovery conduct in a separate matter is irrelevant to their conduct in this case. (Id. at 2.) Defendants argue that the Stay Countermotion is "procedurally defective" and merely an "attempt to avoid the inevitable consequences of Plaintiffs' total lack of action on these issues for over a year." (Id. at 5.)

The WSA is not enforceable. The remaining issue in the Dismissal Motion is whether to dismiss this case with prejudice based on Plaintiffs' discovery misconduct. The Dismissal Motion invokes Rule 37(b)(2)(A), which provides for dismissal for a party's failure to comply with a discovery order, and Rule 41(b), which provides for dismissal where a plaintiff fails to prosecute its case or fails to comply with a court order. (Dismissal Mot. 5.)

Under either Rule 37(b)(2)(A) or Rule 41(b), courts consider four factors when deciding whether to impose dismissal as a sanction for litigant conduct: "'(1) whether the party's failure is due to willfulness, bad faith, or fault; (2) whether the adversary was prejudiced by the dismissed party's conduct; (3) whether the dismissed party was warned that failure to cooperate could lead to dismissal; and (4) whether less drastic

sanctions were imposed or considered before dismissal was or-
dered." Barron v. Univ. of Mich., 613 F. App'x 480, 484 (6th
Cir. 2015) (quoting United States v. Reyes, 307 F.3d 451, 458
(6th Cir. 2002)) (Rule 37(b)(2)(A) context); United States v.
$506,069.09 Seized from First Merit Bank, 664 F. App'x 422, 427
(6th Cir. 2016) (quoting Carpenter v. City of Flint, 723 F.3d
700, 703–04 (6th Cir. 2013)) (Rule 41(b) context). All of these
factors favor dismissal of this action with prejudice.

Plaintiffs have repeatedly failed to comply with the rules
of discovery and the orders of this Court. That failure is not
limited to the last year, but has continued for many years.
Plaintiffs' conduct in the last year, however, is consistent
with their prior failures.

Defendants state that Plaintiffs have failed to "comply
with the Court's Order to pay the Court-awarded sanctions by
September 26, 2016." (Dismissal Mot. 1.) Plaintiffs do not
dispute that they have not complied with that order. (See gen-
erally Dismissal Resp.) Plaintiffs argue that, because the WSA,
if approved, would have resolved the sanctions award, it would
make little sense for Plaintiffs to pay the award before the
Settlement-Enforcement Motion was resolved. (Id. at 3.) That
argument is not well-taken. Plaintiffs filed the Stay Motion on
September 27, 2016. The Stay Motion sought to stay Magistrate
Judge Vescovo's Order Granting Motion to Compel Compliance. The

Stay Motion has not been granted. The deadline in the Order Granting Motion to Compel Compliance has remained in effect. By failing to pay the sanctions award, Plaintiffs are in violation of the Court's order.

Defendants state that Plaintiffs have not cured, or attempted to cure, "their numerous discovery deficiencies that Defendants identified over a year ago and which the Court ordered Plaintiffs to address." (Dismissal Mot. 1 (emphasis in original).) Plaintiffs do not seriously dispute this claim. (See generally Dismissal Resp.) Instead, Plaintiffs argue that their lack of progress should be excused because of the dispute over the Settlement-Enforcement Motion. (Id. at 3.) That argument is not well-taken. As Defendants point out, Plaintiffs' use of the Settlement-Enforcement Motion is self-serving. Given Plaintiffs' contention that the WSA was not enforceable and that the Settlement-Enforcement Motion should be denied, Plaintiffs should have paid the outstanding sanctions award and proceeded with discovery. By choosing not to do so, Plaintiffs ran the risk of being where they are now: the Court has agreed that the WSA is not enforceable, but Plaintiffs have done nothing to resolve the underlying discovery problems that derailed this case in the first place. Plaintiffs have repeatedly failed to comply with the discovery ordered by the Court.

Defendants state that Plaintiffs have failed to "take any action to prosecute this case" since September 2016. (Dismissal Mot. 2.) Rule 41(b) permits a court to dismiss a case based on a plaintiff's failure to prosecute. Plaintiffs' only response is that the Settlement-Enforcement Motion made it reasonable for Plaintiffs to refrain from proceeding on their case. For the reasons discussed above, that argument is not well taken.

The first dismissal factor provides that, "[f]or a plaintiff's actions to be motivated by bad faith, willfulness, or fault, his conduct 'must display either an intent to thwart judicial proceedings or a reckless disregard for the effect of [his] conduct on those proceedings.'" Wu v. T.W. Wang, Inc., 420 F.3d 641, 643 (6th Cir. 2005) (quoting Mulbah v. Detroit Bd. of Educ., 261 F.3d 586, 591 (6th Cir. 2001)) (second alteration in original). There must be a "clear record of delay or contumacious conduct." Freeland v. Amigo, 103 F.3d 1271, 1277 (6th Cir. 1997). Plaintiffs' conduct meets this standard. Plaintiffs have been sanctioned five times in this case for discovery violations, do not seriously dispute that they have yet to correct previous discovery deficiencies, and have twice let the case languish for months for no good reason. That pattern has continued despite numerous changes of counsel. Plaintiffs' failure to follow court orders (including discovery orders) and failure to prosecute their case are entirely Plaintiffs' respon-

sibility. There is a clear record of delay and contumacious conduct, and Plaintiffs have demonstrated a reckless disregard for the effect of that conduct on this proceeding.

The second dismissal factor provides that, "'[a] defendant is prejudiced by the plaintiff's conduct where the defendant waste[d] time, money, and effort in pursuit of cooperation which [the plaintiff] was legally obligated to provide.'" Shavers v. Bergh, 516 F. App'x 568, 570 (6th Cir. 2013) (quoting Schafer v. City of Defiance Police Dep't, 529 F.3d 731, 736 (6th Cir. 2008) (second and third alterations in Shavers)). This factor is met. The docket shows that Defendants have been prejudiced by Plaintiffs' conduct: Defendants have had to prepare and file repeated motions that would have been unnecessary if Plaintiffs had complied with their discovery obligations. The cost to Defendants in time, money, and effort is demonstrated, in part, by the sanctions that have been imposed.

The third dismissal factor provides that a party must have been warned. Plaintiffs have been warned no fewer than six times since September 2015 that failure to cooperate with discovery obligations or court orders could lead to dismissal. (See, e.g., Order Granting Nortek Global HVAC LLC's Mot. to Compel Discovery from Pls. ECIMOS, LLC and Electrical Controls, Inc. 4, ECF No. 106 ("Order on First Mot. to Compel"); Order Granting Defs. Logical Systems, Inc., Logical Systems, LLC, and

Nortek Global HVAC LLC's Mot. to Compel Discovery from Pls. ECI-MOS, LLC and Electrical Controls, Inc. 4, ECF No. 105 ("Order on Second Mot. to Compel"); Order Granting Def. David Tesluk's Mot. to Compel Discovery from Pls. ECIMOS, LLC, and Electrical Controls, Inc. 5, ECF No. 108 ("Order on Third Mot. to Compel"); Order on Defs. Logical Systems, Inc. and Logical Systems, LLC's Mot. to Compel Discovery from Pls.' ECIMOS, LLC, and Electrical Controls, Inc. 3, ECF No. 104 ("Order on Fourth Mot. to Compel"); March 2016 Report 28; Fee Order 19 n.3.) Indeed, in her March 2016 Report, Magistrate Judge Vescovo stated, "In hindsight, the court should have recommended dismissal with prejudice in October 2015 . . . . All four of the [dismissal] factors were met at that point." (March 2016 Report 28.) Plaintiffs' claims against one former defendant, Tesluk, have been dismissed as a sanction for Plaintiffs' discovery misconduct. (March 2016 Report 29–31; June 2016 Order 10–12.) For almost two years, Plaintiffs have been well aware that this case was subject to dismissal. This factor is met.

The fourth dismissal factor provides that less drastic sanctions should be imposed or considered before dismissal. Sanctions less drastic than dismissal have been considered and imposed repeatedly. Plaintiffs have been sanctioned monetarily at least five times, but Plaintiffs have continued their contumacious conduct.

On July 15, 2015, Nortek Global, _inter alia_, filed a motion to compel against Plaintiffs. (First Mot. to Compel.) That motion was granted on September 2, 2015. (Order on First Mot. to Compel.) On July 21, 2015, LSI, LSL, and Nortek Global filed a second motion to compel against Plaintiffs. (Second Mot. to Compel.) That motion was granted on September 2, 2015. (Order on Second Mot. to Compel.) On August 7, 2015, Tesluk filed a third motion to compel against Plaintiffs. (Third Mot. to Compel.) That motion was granted on September 3, 2015. (Order on Third Mot. to Compel.) On August 13, 2015, LSI and LSL filed a fourth motion to compel against Plaintiffs. (Fourth Mot. to Compel.) That motion was granted in part and denied in part on September 1, 2015. (Order on Fourth Mot. to Compel.) Each of the four orders addressing the motions to compel awarded attorney fees to the movants. The total amount of fees and costs Plaintiffs owed as a result of the four orders was $63,338.04: $42,142.83 to Nortek Global, $13,669.00 to LSI and LSL collectively, and $7,526.21 to Tesluk. (See Order Awarding Attorney Fees and Expenses to Def. Nortek Global HVAC LLC for Amounts Incurred in Preparing and Filing Mot. to Compel 2, ECF No. 127; Order Awarding Attorney Fees and Expenses to Defs. Logical Systems, Inc., and Logical Sys., LLC, for Amounts Incurred in Preparing and Filing Mot. to Compel 2, ECF No. 128; Order Awarding

39

Attorney Fees and Expenses to Def. David Tesluk for Amounts Incurred in Preparing and Filing Mot. to Compel 2, ECF No. 129.)

Plaintiffs were monetarily sanctioned a fifth time pursuant to the March 2016 Report and the June 2016 Order. As noted in Section I infra, that sanction award was $53,902.98. (See Fee Order).

This factor is met.

All four of the factors to be considered before dismissal under Rule 37(b)(2)(A) and Rule 41(b) are met. The Dismissal Motion is GRANTED insofar as it requests that this action be dismissed. This action is DISMISSED WITH PREJUDICE.[5] The Stay Countermotion is DENIED as moot.

The Dismissal Motion also asks the Court to "award[] Defendants their fees and costs in connection" with the July 2016 Motion to Dismiss as well as the Dismissal Motion. (Dismissal Mot. 6; see also Dismissal Reply 5.) Dismissal of this action is a sufficient sanction. Imposing an additional fee award is unnecessary and would not be equitable. Cf. Fed. R. Civ. P. 37(b)(2)(C) (fee award not required where "circumstances make an

_____

[5] Defendants specifically request dismissal of "this action with prejudice." (Dismissal Mot. 6 (emphasis added); see also Dismissal Reply 5 (same language); Settlement-Enforcement Mot. 4 (motion by Defendants and Tesluk seeking dismissal "of the case with prejudice" if the WSA is determined to be unenforceable).) The Court construes these requests to mean that Defendants and Tesluk seek dismissal not only of Plaintiffs' claims, but of the entire action, including any remaining counterclaims.

award of expenses unjust"). The Dismissal Motion is DENIED insofar as it requests an award of fees and costs.

### E.  Stay Motion

Given the resolution of the other motions in this matter, that Stay Motion is DENIED as moot.

## IV.  CONCLUSION

The Leave-to-Supplement Motion is GRANTED and the Settlement-Enforcement Motion is GRANTED in part and DENIED in part. Plaintiffs are ORDERED to pay unpaid sanctions awards as follows: $3,347.50 to David Tesluk; $1,326.00 to Gail Wayne Roane and Michael Gray collectively; $11,733.48 to Logical Systems, Inc., and Logical Systems, LLC, collectively; and $37,496.00 to Nortek Global HVAC LLC. The Reconsideration Motion is GRANTED, and the sanctions levied against Weirich and Peel in the June 2016 Order are stricken. The Dismissal Motion is GRANTED in part and DENIED in part. This action is DISMISSED WITH PREJUDICE. The Stay Countermotion and the Stay Motion are DENIED as moot.

So ordered this 11th day of August, 2017.


/s/ Samuel H. Mays, Jr.
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE